**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| In re: | Case No.: 26-42577 |
| Mercy Health Care, LLC. | Chapter 11 Case (Subchapter V) |
| Debtor. | |

---

# PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11

---

## INTRODUCTION

Mercy Health Care, LLC, (the "Debtor") proposes the following Chapter 11 Plan of Reorganization for Small Business under Chapter 11 (the "Plan") pursuant to the provisions of the Bankruptcy Code.

Prior to voting to accept or reject this Plan, all creditors are encouraged to read and review the Plan in its entirety. **Please read all sections carefully and discuss them with your attorney, as your rights may be affected. If you do not have an attorney, you should consult with one.**

The Debtor strongly encourages all creditors to vote in favor of the Plan. The Plan is in the best interests of creditors because the Debtor's continued operations will generate cash flow for distribution to creditors. The alternative to confirmation of the Plan, and distribution of the payments required under the Plan, is a chapter 7 liquidation, in which creditors will receive less than the projections in this Plan.

## [redacted] Article 1: Defined Terms

### 1.1 Defined Terms in Bankruptcy Code.

The definitions and rules of construction set forth in sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

### 1.2 Additional Defined Terms.

(1) "Allowed" means with respect to any claim: (a) a proof of claim or a claim that has been scheduled by the Debtor in its Schedules as other than disputed, contingent, or unliquidated and as to which the Debtor or any other party-in-interest has not filed an objection; (b) a claim that either is not a Contested Claim or has been allowed by a Final Order; or (c) a claim that is allowed in a stipulation or settlement executed prior to or after the Effective Date; and with respect to all claims, only after reduction for applicable setoff and similar rights of the Debtor.

(2) "Bankruptcy Code" means Title 11 of the United States Code.

(3) "Bankruptcy Rule" means a Federal Rule of Bankruptcy Procedure.

(4) "Chapter 11 Case" means the Debtor's pending case under the Bankruptcy Code, identified in the caption at the top of this Plan.

(5) "Confirmation Date" means the date on which the Confirmation Order is entered.

(6) "Confirmation Order" means the order entered by the Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

(7) "Contested Claim" means: (a) a claim that was scheduled by the Debtor in its Schedules as a disputed, contingent, or unliquidated claim and that has not been otherwise Allowed; (b) a claim that is not an Allowed claim because the Debtor or other party in interest has objected to allowance of the claim under sections 502(b) or 503 of the Bankruptcy Code and Bankruptcy Rule 3007; (c) any secured or unsecured portions of a secured claim that is the subject of a motion for determination of the value of security under section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012; (d) any claim held by a creditor against which the Debtor has demanded the recovery of property pursuant to section 502(d) of the Bankruptcy Code, without regard to whether such claim was previously an Allowed claim; (e) a claim that is subject to final adjudication in a proceeding outside the Court against one or more of the Debtor's insurers; or (f) a claim whose validity or amount is subject to determination in an adversary proceeding that has not been resolved by a Final Order.

(8) "Court" means the United States Bankruptcy Court for the District of Minnesota, which properly exercises jurisdiction over the Chapter 11 Case.

(9) "Debtor" means Mercy Health Care, LLC

(10) "Effective Date" means the first business day following the date that is 14 days after the entry of the Confirmation Order.

(11) "IRS" means the Internal Revenue Service.

(12) "Petition Date" means August 3, 2026.

(13) "Plan" means this chapter 11 plan of reorganization as amended, revised, or modified.

**1.3 Exhibits.**

All exhibits to the Plan are hereby incorporated by reference and made part of the Plan. The exhibits to the Plan include the following:

Exhibit A Liquidation Analysis

Exhibit B Five-Year Cash Flow Projections

## Article 2: Background Information Regarding the Debtor, Liquidation Analysis and Feasibility

### 2.1 Description and History of the Debtor's Business.

The Debtor is a Minnesota limited liability company. The Debtor operates a home health care business providing in-home care and services to individuals with various disabilities. The Debtor believes that this proposed Plan ensures the long-term viability of the Debtor and its continued ability to service clients in Minnesota.

### 2.2 Liquidation Analysis.

The Plan must provide that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim or equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit A**. As set forth in the liquidation analysis, if the Debtor was forced to liquidate its assets in chapter 7, priority and general unsecured creditors would receive much less than they will receive under this Plan. As liquidation will result in the Debtor ceasing operations, no future income from the Debtor will be available to pay creditors. Thus, the best recovery for unsecured creditors depends on the continued operation of the Debtor.

### 2.3 Ability to Make Future Plan Payments.

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. The Debtor has provided projected financial information in **Exhibit B**. The Debtor's financial projections show that the Debtor will have sufficient revenue to make payments on the Plan. The final Plan payment is expected to be paid in December 2031.

## Article 3: Classification of Claims and Interests

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

The following table designates the classes of claims against the Debtor and specifies which of those classes are: (a) impaired or unimpaired by the Plan; and (b) entitled to vote to accept or reject the Plan.

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| N/A | Administrative Expenses | No | No |
| N/A | Priority Claims | No | No |
| 1 | Secured Claim - Itria | Yes | Yes |
| 2 | Unsecured Claims | Yes | Yes |
| 3 | Equity Interest Holders | No | No |

## Article 4: Treatment of Administrative Expense Claims and Priority Tax Claims

Under section 1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims are not in classes and are treated as unclassified claims. Under the Plan, the unclassified claims shall receive the treatment described below:

### 4.1 Allowed Administrative Expense Claims.

All holders of professional fees and expenses claims shall file and serve an application for allowance of compensation and reimbursement of expenses incurred through the Effective Date, no later than 30 days after the Effective Date. The Debtor shall pay any allowed professional fees and expenses as follows:

Subchapter V Trustee: The estimated allowed total owed to the Subchapter V Trustee is $3,000. Such amount will be paid in full within 30 days after approval by the Bankruptcy Court. Thereafter, if the Subchapter v trustee has additional fees awarded, the Debtor will pay such fees within 30 days after allowance.

Sieling Law: Sieling Law has funds remaining from the prepetition retainer that are expected to be sufficient to pay its allowed fees in this case. If such funds are insufficient, the Debtor will pay all allowed fees within 60 days after the Effective Date.

The Debtor does not believe there are any other administrative claims. If there are holders of Allowed administrative claims, such claims shall: (a) be paid in full in cash the later of: (i) 30 days after the date the claim becomes Allowed; or (b) receive such other treatment as agreed in writing by the holder thereof or ordered by the Bankruptcy Court.

### 4.2 Priority Claims.

**Pre-petition Tax Claims**:

Minnesota Department of Revenue: The Minnesota Department of Revenue filed two proof of claims, claiming a total priority amount of $55,597.32. Such priority taxes will be paid in full with interest at a rate of 7%, payable in 60 monthly installments of $1,100.00, beginning one month after the Effective Date. The general unsecured portion of MDOR's claim will be treated as a Class 2 claim.

IRS Claim: The IRS filed a proof claim claiming the following:

> Secured Claim of $119,713.00: The IRS has a secured claim in the amount of $119,713.00 pursuant to a tax lien recorded August 19, 2025. However, based on the balance owing to the Class 1 creditor and the total value of the debtor's assets on the petition date ($119,713), the IRS secured claim is secured in the amount $73,113. Such amount will be paid with interest of 7% in 60 monthly installments

of $1,447.00, beginning one month after the Effective Date. The remainder of the IRS secured claim will be treated as a Class 2 general unsecured claim.

Unsecured priority claim of $106,838.24: The debtor will pay the IRS priority claim in full with interest of 7% in 60 monthly installments of $2,066.00, beginning one month after the Effective Date.

Unsecured general claim: The general unsecured portion of the IRS claim will be treated as a Class 2 claim.

The pre-petition priority tax owed by the Debtor is nondischargeable pursuant to 11 U.S.C. §§ 523(a) and 1192(2).

All other Allowed claims not specifically treated in this Section and entitled to priority under section 507(a) of the Bankruptcy Code shall be paid in full in cash as soon as practicable following the later of: (a) the Effective Date, (b) the due date, or (c) the date on which such claims are Allowed.

## [redacted] Article 5: Treatment of Classified Claims and Interest

**Class 1: Secured Claim – Itria Ventures, LLC ("Itria")**

Class 1-A consists of the secured claim of Itria pursuant to certain agreements, which is secured by a lien on nearly all assets of the Debtor. The total amount owed to Itria is $46,600.00. The Debtor will pay such amount in 60 monthly installments of $777.00 commencing one month after the Effective Date. The Debtor's obligation to pay Itria shall be secured by the existing lien and such lien shall have the same priority, dignity, and effect as the pre-petition lien. After Itria receives the payment pursuant to this Article, Itria shall execute a release of its liens on the Debtor's assets, including, without limitation, filing a termination of its UCC financing statement.

**Class 2: General Unsecured Claims**

Class 2 consists of all Allowed unsecured claims against the Debtor that are not entitled to priority and are not classified elsewhere in this Plan. Pursuant to the Bankruptcy schedules and the filed proofs of claim, the Debtor believes the general unsecured claims total approximately $142,000.

Holders of Allowed Class 2 claims shall receive their pro rata share of $14,000.00, with $7,000 distributed in 2029 and $7,000.00 distributed in 2031. This results in the payment of approximately 9.8% of Class 2 claims.

Nothing contained in this Plan shall restrict the Debtor or the Reorganized Debtor from objecting to, contesting, or seeking to avoid a Class 2 claim as permitted under the Bankruptcy Code or otherwise applicable law. The payments to the holder of the Class 2 claims pursuant to this Article shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 2 claims.

**Class 3: Equity Interest Holders.**

Equity Interest Holders are people who hold an ownership interest in the Debtor. The member of Class 3 is Ziad Zahran who is the 100% owner of the Debtor. Mr. Zahran shall retain his equity interest in the Debtor.

## Article 6: Distributions and Claims Administration

### 6.1 Payments under the Plan.

Payments under this Plan shall be made by check (mailed with first class postage pre-paid), ACH, or wire transfer to the holder of each Allowed claim. If made by check, payments shall be mailed to the claim holder at the address listed on its proof of claim as of the Confirmation Date, or if no proof of claim has been filed by the Confirmation Date, to the address listed on the Schedules as of the Confirmation Date. Holders of Allowed claims as of the Confirmation Date may contact the Reorganized Debtor to amend their addresses or bank account information at:

Mercy Health Care, LLC
Attn: Ziad Zahran
8931 Farnsworth Ave N
Brooklyn Park, MN 55443

### 6.2 Delay of Distribution on Contested Claims.

No distribution will be made on account of a Contested Claim unless such claim is Allowed by a final non-appealable order.

## Article 7: Executory Contracts and Unexpired Leases

### 7.1 Acceptance and Rejection of Contracts and Leases.

The Debtor's lease with 1120 S MN, LLC shall be assumed as of the Effective Date. There are no known arrears owed to 1120 S MN, LLC. All other executory contracts, unexpired leases, or other agreements that are not Assumed Agreements shall be deemed rejected as of the Effective Date. Entry of the Confirmation Order shall constitute, pursuant to sections 365 and 1123 of the Bankruptcy Code, the approval of the rejection of all such executory contracts, unexpired leases, and other agreements.

To the extent not subject to a claim filing deadline set forth in any prior or subsequent notice or order, claims arising out of the rejection of an executory contracts or unexpired lease pursuant to this Article of the Plan must be filed with the Court within 30 days after the entry of the Confirmation Order and, upon allowance, shall be paid as a general unsecured creditor.

## Article 8: Implementation and Effect of Confirmation of the Plan

**8.1 Title to and Vesting of Assets.**

To the extent authorized by Section 1141 of the Bankruptcy Code, as modified by Section 1181, all property of the Debtor and the estate vests in the Reorganized Debtor and such property is free and clear of all liens, encumbrances, claims, and interests of creditors, including any notices of *lis pendens*, except to the extent the Plan explicitly provides that such liens, encumbrances, claims, or interests are retained.

**8.2 Preservation and Settlement of Causes of Action.**

In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan, the reorganized Debtor shall retain all causes of action, including without limitation causes of action that may exist under sections 542, 544 through 550 and 558 of the Bankruptcy Code or under similar state laws (collectively, the “Retained Actions”). The Debtor does not believe there are any viable actions at this time; however, should the Debtor recover any sums of money on a cause of action under the bankruptcy code, such funds will be disbursed pro-rata to unsecured creditors.

**8.3 Management and Officer Salary**

From and after the Effective Date, the Reorganized Debtor may operate, use, acquire, and dispose of property in accordance with the Plan, free and clear of any restrictions of the Bankruptcy Code and the Bankruptcy Rules, and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided in this Plan. From and after the Effective Date, the Reorganized Debtor shall continue to be managed as it was prior to and during the Chapter 11 Case – Mr. Zahran will maintain his positions with the Debtor and keep his salary arrangement, subject to periodic cost of living adjustments. The Debtor will not pay Mr. Zahran for any other claims he might have against the Debtor until all payments have been made as set forth in this plan.

**8.4 Discharge.**

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date, the Debtor will be discharged from all claims that arose before confirmation of this Plan, except that the Debtor will not be discharged of any debt:

(a) imposed by this Plan; or

(b) to the extent provided in section 1141(d)(6) of the Bankruptcy Code.

If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any claim provided for in this Plan until the Court grants a discharge on completion of all payments due within the three years of this Plan, or otherwise provided in section 1192 of the Bankruptcy Code.

A discharge under this Plan discharges, waives, and releases the Debtor from any debt or claim that arose before the Effective Date and any debt of a kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, regardless of whether or not: (a) a proof of claim was

filed or deemed filed under section 501 of the Bankruptcy Code; (b) such claim is Allowed under section 502 of the Bankruptcy Code; or (c) the holder of such claim has accepted the Plan. The payments of, distributions on account of, or treatments of claims in this Plan are deemed to satisfy in full all claims.

**8.3. Distribution of Plan Payments.**

If the Plan is confirmed pursuant to 11 U.S.C. 1191(a) or 1191(b), the Debtor will make all payments under this Plan notwithstanding the provisions of the Bankruptcy Code.

## Article 9: General Provisions

**9.1 Default.**

Nothing contained in this section will limit or affect any remedies available to creditors under the Bankruptcy code or other applicable law. If the Debtor fails to timely make a payment due under Plan, the relevant party may send a written notice of default to the Debtor.

Unless the Plan expressly provides otherwise, if the Debtor fails to cure within 30 business days of such notice from a creditor, the relevant creditor shall be entitled to file a motion to obtain stay relief with respect to any collateral subject to its liens. All unsecured creditors shall be entitled to treat this Plan as a contract and a default hereunder as a breach of contract by the Debtor.

**9.2 Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**9.3 Binding Effect.**

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**9.4 Controlling Effect.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Minnesota govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

IN WITNESS WHEREOF, the undersigned have executed this Plan of Reorganization for Small Business under Chapter 11 as of November 2, 2026.

Mercy Health Care, LLC

*s/ Ziad Zahran*

By: Ziad Zahran
Its: President

SIELING LAW, PLLC

By: *s/ Mary F. Sieling*
Mary F. Sieling, (#389893)
12800 Whitewater Dr, Ste. 100, #3201
Minnetonka, MN 55343
Phone: 612-325-1191 Email: mary@sielinglaw.com

Attorney for the Debtor

**Mercy Health Care, LLC**

**Liquidation Analysis**

| Asset | Gross Value |
|---|---|
| Cash and bank deposits | $3,013.00 |
| Accounts Receivables | $116,000 |
| Office Furniture and computers | $700 |
| Total: | $119,713.00 |

**<u>Chapter 7 Distribution</u>**

| | |
|---|---|
| Itria Secured Claim | $46,600 |
| IRS Secured Claim | $73,113 |
| Chapter 7 Administrative Claims (unlikely to administer asssets) | $0.00 |
| Priority tax claims and unsecured creditors | $0.00 |

Mercy Health Care LLC

| INCOME | 2027 | 2028 | 2029 | 2030 | 2031 |
|---|---|---|---|---|---|
| DHS Payments | $1,680,000.00 | $1,764,000.00 | $1,852,000.00 | $1,944,810.00 | $2,042,050.00 |
| | | | | | |
| | | | | | |
| TOTAL | | | | | |
| | | | | | |
| EXPENSES | | | | | |
| Payroll and Payroll Expenses | $1,417,000 | $1,501,000 | $1,590,000.00 | $1,677,000.00 | $1,767,000.00 |
| Owner wages | $150,000 | $150,000 | $150,000 | $150,000 | $150,000 |
| Rent | $7,200.00 | $7,920.00 | $7,920.00 | $7,920.00 | $7,920.00 |
| Office Expenses | $7,800 | $8,580.00 | $0.00 | $9,438.00 | $10,382.00 |
| Software | $5,400 | $5,940.00 | $6,534.00 | $7,188.00 | $7,907.00 |
| License | $5,000 | $5,000 | $5,000.00 | $5,000.00 | $5,000.00 |
| Insurance | $6,700 | $6,700 | $8,040.00 | $8,040.00 | $8,040.00 |
| Supplies | $1,200 | $1,200 | $1,200.00 | $1,200.00 | $1,200.00 |
| Vehicle expense | $6,000 | $6,000 | $6,000.00 | $6,000.00 | $6,000.00 |
| Phone, fax and Internet | $2,400 | $2,400 | $2,400.00 | $2,400.00 | $2,400.00 |
| Miscellaneous | $2,000 | $2,000 | $2,000.00 | $2,000.00 | $2,000.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| IRS Priority Claim payment | $24,792.00 | $24,792 | $24,792 | $24,792 | $24,792 |
| IRS Secured Claim Payment | $17,364.00 | $17,364 | $17,364 | $17,364 | $17,364 |
| Minnesota Revenue Plan Payme | $13,200.00 | $13,200 | $13,200.00 | $13,200.00 | $13,200.00 |
| Itria Ventures Payment | $9,324.00 | $9,324 | $9,324.00 | $9,324.00 | $9,324.00 |
| Trustee Fees | $3,000.00 | $500 | | | |
| Attorney Fees | $1,000.00 | $1,000 | $1,000 | $1,000 | $1,000 |
| Unsecured creditors | $0.00 | 0.00 | $7,000 | | $7,000 |
| Total | $1,679,380.00 | $1,762,920 | $1,851,774.00 | $1,941,866.00 | $2,040,529.00 |
| Difference | $620 | $1,080 | $226.00 | $2,944 | $1,521 |

Exhibit B